### HALL *v.* MORRISON.

1. A special plea that the payee of a promissory note would not execute a deed of conveyance which he was bound by contract to execute, unless the person entitled to the deed would execute and deliver a promissory note for a pretended debt which he did not

owe and which had no connection with the consideration of the deed, is virtually a plea of want of consideration for the note, and as such is a good defence to an action founded on the note. Allegations of fraud and duress contained in the plea may be regarded as surplusage.

2. If, at the time of taking a conveyance of real estate upon which a mine was situated and mining operations had been conducted, the vendee purchased from the vendor the mining and transportation machinery and implements which were then upon the premises and accessible to the purchaser, giving his promissory note for the price thereof, and the vendee went into possession or was already in possession of the realty, no further delivery of the personalty was necessary unless there was some actual stipulation in the contract for subsequent and more formal delivery.

3. There being a plea that the note was in part without any consideration whatever, and also a plea of total failure of consideration, and there being evidence tending to show that it was understood at the time of giving the note, which was the time of the purchase, that the plaintiff, the payee, was to get up the tools, &c., and put them where defendant could get them, and he subsequently refused to do this, and that defendant never did get them, it was error to charge the jury that if the defendant had notice of where the property was, and at that time he could have gotten possession of it by the exercise of ordinary diligence, and failed to do so, that would be constructive delivery to him, unless he asked the plaintiff to actually deliver the property at the time of the trade. A request to get up the tools, &c., subsequently made, would be equally effectual, if such was the understanding of the parties.
July 24, 1893.

Complaint on promissory note. Before Judge MILNER. Dade superior court. September term, 1892.

Suit was brought by Morrison on a note for $2,000 principal, signed by G. J. Hall, C. A. Hall and T. J. Lumpkin, dated February 12, 1892, and due at 90 days. The Halls pleaded not indebted; that the note was obtained by plaintiff through fraud, misrepresentations, and by fraudulent means and artful practices by which they were deceived and forced to sign it; that in part it was given without any consideration; and that if any consideration existed for giving it, the same had entirely failed. G. J. Hall further pleaded, that he is informed plaintiff claims the note was given for certain goods and

other property consisting of tools, engine, etc., all of which defendant denies; yet if any such property was intended by plaintiff as a consideration for the note, it was never delivered by him to defendant, if any such ever existed; and that the same was fraudulently represented by plaintiff to be in condition suited for the purpose intended, whereas this was not true.　He further filed the following plea, which was stricken on demurrer: The note sued was obtained by fraud and duress practiced upon him by the plaintiff in the following manner: Before signing and delivering said note, defendant had contracted with plaintiff, Thomas Cummings, John Cummings and J. P. Bond for the purchase of land in Dade county known as the Montague tract, for which he was to pay said parties $29,205, $10,000 of which was to be paid in cash, $10,000 on January 5th, 1890, and $9,205 on May 5th, 1890; and upon payment of the last named amount, said parties were to execute and deliver to him their joint deed to said land.　He paid the $10,000 cash payment at the time, and on January 5th, 1890, tendered·to said parties the second payment of $10,000, and through some misunderstanding about the amount of the land and the titles, said amount was not actually paid though tendered, and was ready to be paid by defendant in accordance with his contract.　When the third instalment fell.due on May 5th, 1890, he paid· said parties the full amount of the balance of the purchase money for the land, $19,205, and demanded of them a deed in accordance with the contract of purchase,. when plaintiff refused to join in the deed, only upon condition that defendant would execute to him the note now sued on, he claiming that defendant owed him this amount in some other transaction between them, all of which was not true and denied at the time by defendant to be true and owing in any way; but plaintiff positively refused to sign a deed to defendant for the land, only

upon this note being given, all of which was done by plaintiff [to] consummate the fraud upon defendant and to force him to execute the note sued on, when plaintiff knew at the time the same was unjust and not owing to him by defendant. The fraudulent means used by plaintiff to procure this note were these: After having purchased this land from the parties named and paid them $10,000 of the purchase money, and after having had delivered to him by them a written contract whereby they agreed to make and deliver him a deed to the land upon his paying the balance of the purchase money at the time named, and relying on plaintiff and the other "partners" to comply with their contract, and having implicit confidence in plaintiff complying therewith, and that he would get a deed to the land on the day agreed in the contract, May 5th, 1890, upon his paying on that day the balance of the purchase money, defendant entered into a contract with the New England Company, whereby he sold the land to said company and received of the purchase price therefor $10,000, and contracted with said company to make them a deed to the land on May 5th, 1890, when they should pay him the balance of the purchase money therefor. His contract with said company was such that he was obligated and compelled, in order to consummate said trade, to make said deed on May 5th, 1890, he believing at the time of making said trade that plaintiff and these other parties would comply with their contract and make and deliver to him a deed to the land on the said day, and thereby enable him to comply with the contract with the New England Company, never dreaming for one moment that plaintiff would undertake the fraudulent scheme that he did in refusing to sign said deed after having received the purchase money therefor, and thereby force defendant against his free will to execute to him the note sued on, and thereby fraudulently procure the execution of the

same.   Plaintiff knew at the time that the defendant
had made the sale of this property to the New England
Company, and that by the consummation of said sale
defendant would make a good profit on the purchase
price; that he had paid for the land, and that by the
terms of his trade with this company he was bound to
make to·them a deed on a certain fixed day in order to
consummate said trade and to get the price they had
agreed to pay for the land, and to hold the money al-
ready paid him on the land.   Plaintiff knew, at the time
of perpetrating this fraudulent scheme on defendant,
that defendant was largely interested in the trade being
" connected " with said company, and that to defeat it
would result in great financial loss to defendant, besides
a breach of his solemn obligations; and in order to en-
able defendant to comply with his obligation by which
he sold this land to said company, and to execute a deed
to the same on the day named, and to prevent the suits
for damages that were then threatened to be instituted
against defendant by said company for failure to comply
with the sale made to them and for which $10,000 had
been paid to defendant, and the inevitable result of be-
ing liable to·refund the $10,000 paid to him, and the
rescission of said trade which would have resulted in
great damages and loss to defendant, to say nothing of
the damages to which he might have been liable for a
failure to comply with his contract, all of which was
known to plaintiff, and that he would bring about such
results by his refusing to sign said deed as he was then
doing, thus plaintiff fraudulently, and for the purpose
of forcing defendant to sign this note contrary to his
free will and to which he did not agree in law, and to
save the great loss and damages that were then threat-
ened and impending against him by reason of the fraud-
ulent conduct of plaintiff, and to secure the signature of
plaintiff to said deed only, did he sign said note, at the

same time denying any right of plaintiff to have the same, and any indebtedness to plaintiff, of which plaintiff well knew, and was used as a means to force defendant's signature to said note. All of which was fraudulent, and in equity and good conscience was null and void; and he prays the court that said note be so declared.

The jury found for the plaintiff the full amount of the note sued on. Defendant's motion for a new trial was overruled, and he excepted. The motion contains the grounds, that the court erred in striking the plea before set out, that the verdict is contrary to law and evidence, and that the court erred in charging the jury as shown in the third head-note.

PAYNE & WALKER, for plaintiff in error.

R. J. & J. McCAMY, *contra.*

BLECKLEY, Chief Justice.

1. The court erred in striking the special plea, for, disregarding allegations of fraud and duress contained in it, which may be treated as surplusage, the plea was in substance one of want of consideration for the note sued on, and, if established, would be a good defence to the action. If the note was given as a promise to pay for doing something on the part of the payee which he was already bound to do and which he refused to do, using that refusal as a means of morally coercing the makers of the note to execute it, the payee parted with no consideration nor did the makers get any.

2. Upon the assumption that at the time of taking a conveyance from Morrison the Halls purchased from him the mining and transportation machinery and implements which were then upon the premises and gave the note sued on for the price thereof, and the Halls went into possession or were then already in possession of the realty conveyed to them by Morrison, and the personalty so purchased was accessible to them, Morri-

son would not be bound to make any further delivery of the personalty unless he stipulated in the contract of sale for the making of subsequent and more formal delivery. Possession of and title to the realty on which the personalty was would be enough to invest the purchasers with full dominion over it, unless there was some obstacle to the exercise of such dominion; and it could and should be presumed that no other or different delivery was contemplated by the parties, unless something was expressly mentioned from which a different intention could fairly be inferred.

3. The trial took place on a plea alleging that the note was in part without any consideration whatever, and another plea of total failure of consideration. There was evidence tending to show that in the contract for the sale of the personalty it was agreed and understood that Morrison was to get up the tools, &c., and put them where the Halls could get them, and that he subsequently refused to do this, and the Halls never did get them. If this was the truth of the case, delivery of the property to which this understanding was applicable was never completed, and the court was mistaken in holding and charging that notice of where the property was and ability to get possession by the exercise of ordinary diligence would be constructive delivery unless at the time of the trade Hall requested the plaintiff to actually deliver the property. There was no use for such a request at the time of the trade, for that was not the time contemplated in the agreement of the parties. The getting up of the tools, &c., was to be done afterwards, and a request subsequently made would be more in line with the agreement and certainly as effectual as a request made at that time. For the errors indicated there ought to be a new trial.                    *Judgment reversed.*